**E-FILED**
Wednesday, 17 December, 2008  02:30:33 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

---

| | |
|---|---|
| **DEBORAH NUZZI,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Case No. 07-CV-2127** |
| ) | |
| **BOURBONNAIS ELEMENTARY** ) | |
| **SCHOOL DISTRICT and ROB RODEWALD,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#83) filed by

Defendant Rob Rodewald and the Motion for Summary Judgment (#85) filed by Defendant

Bourbonnais Elementary School District (District).  This court has carefully reviewed the arguments

of the parties and the documents provided by the parties.  Following this careful and thorough

review, Defendants' Motions for Summary Judgment (#83, #85) are GRANTED.

## FACTS[1]

Plaintiff, Deborah Nuzzi, began her employment with the District in July 2004.  She was

hired as the principal of Robert Frost Elementary School, a school for preschool and kindergarten

students.  Her salary was $66,000 for the 2004-2005 school year and was increased to $70,500 for

the 2005-2006 school year.  Plaintiff's salary was based upon a 10½ month contract.  At the time

she was hired, and during her employment, Defendant Rob Rodewald was a member of the District's

School Board.  Rodewald's wife was employed as a teacher at Robert Frost Elementary School and

worked with Plaintiff.  Prior to the end of the 2004-2005 school year, Plaintiff's family and

---

[1] The facts are taken from the Statements of Undisputed Facts filed by the parties and the
documents filed by the parties.

Rodewald's family had gone out together in social settings.

Plaintiff and Rodewald served on the District's Communication Committee.  As part of their involvement, they had pre-committee meetings which took place in Plaintiff's office at Robert Frost Elementary School.  The purpose of the meetings was to set the agenda.  Plaintiff testified that she felt that Rodewald would stare at her and sit too close to her at the pre-committee meetings.  Plaintiff testified that Rodewald looked at her for extended periods of time which she thought was "atypical for [a] professional man."  Plaintiff testified that she believed that "his gazes were not always at my face but were more the length of my body even seated."  Plaintiff testified that Rodewald was approximately 20 inches away from her when she felt he was too close to her.  Plaintiff testified that she started staying behind her desk during the pre-committee meetings.  Plaintiff also testified that, when Rodewald came to the school to visit his wife and for other District-related functions, she felt that he would stare at her.  Plaintiff estimated that, from the late fall of 2005 until January 24, 2006, there were probably 10 to 12 occasions when she sensed that Rodewald was looking or gazing at her in a manner that made her uncomfortable.  Plaintiff testified that Rodewald touched her on one occasion.  Following a School Board meeting in the late fall of 2005, Rodewald came up behind her and patted her on the shoulder several times to tell her that he wanted to speak with her out in the parking lot.  Plaintiff testified that she found this touching of her shoulder to be rude and inappropriate for a professional.  She testified that she found the touching offensive because she did not believe Rodewald would have done that to a male colleague.

In the late fall of 2005, Plaintiff's husband, Tom Nuzzi, applied for a position as superintendent of the District.  According to Plaintiff, Rodewald had strongly urged him to apply for the position.  Plaintiff's husband was interviewed and was a finalist for the position.  On January

24, 2006, Plaintiff attended a School Board meeting.  At the meeting, it was announced that the District was hiring Dr. Myron Palumbo to replace the outgoing superintendent, James DeZwaan. Plaintiff testified that she knew prior to the meeting that her husband was not chosen for the position.  She also testified that she had not spoken to Rodewald about the Board's decision.  After the meeting, Plaintiff left and walked out of the building with Cathy Allers, the assistant superintendent, and Abby Saldivar, a 7th grade math teacher.  As she was leaving, Rodewald called out "Deb" and ran after her.  When Rodewald was six to seven feet away from her, Plaintiff told him that she had another engagement and he said, "oh, Deb."  Plaintiff and the other two women walked out of the building and proceeded to their cars.  Rodewald did not exit the building to follow Plaintiff.  Plaintiff testified that the encounter with Rodewald lasted between 45 and 60 seconds. Plaintiff testified that Allers and Saldivar commented that Rodewald's behavior was "strange" and Plaintiff stated that she was "quite embarrassed."  Plaintiff testified that she told her husband and parents about it.  She testified that she went to work the next day and her work performance was not affected.  She did take the time to tell her secretary, Diane Hurst, about the incident.

Plaintiff testified that she and Rodewald attended a Communications Committee meeting on January 26, 2006.  Plaintiff testified that she stayed after the meeting was over and helped clean up. Plaintiff testified that, when she walked out of the door of the room, she saw Rodewald approach her from behind the door.  Plaintiff testified that Rodewald moved toward her so that he was only 12 or 15 inches away.  Plaintiff testified that "he said something to the effect of, you know, you know, how are we?"  Plaintiff testified that she said, "what?" and "he motioned with his hands and said, you and me . . . how are we doing?"  Plaintiff testified that Rodewald raised his hand and she "thought he was either going to touch my shoulder, try and hug me, pat me on the back."  Plaintiff

testified that she "sidestepped" and started walking and Rodewald did not touch her.  Plaintiff

testified that Rodewald began to walk with her and said, "you know, I don't know how you're

feeling since, you know, Tom didn't get the superintendency."  Plaintiff testified that she told him

that she was actually fairly relieved.  Plaintiff testified that they walked to their cars, which were

parked next to each other, and she left.  Plaintiff testified that this encounter with Rodewald lasted

four minutes.

Plaintiff testified that Rodewald never touched her in a sexual manner, never made any

sexually explicit statements to her and never propositioned her for sex or asked her out on a date.

Plaintiff testified that she did not make a report of sexual harassment prior to April 7, 2006.  She

testified that she did discuss Rodewald's conduct with the school social worker, Rosemary Freehill,

and her secretary.

On April 7, 2006, DeZwaan called Plaintiff in for a meeting and raised some concerns he had

about her performance which, he testified, he wanted to deal with before he retired and left his

position as superintendent of the District.  At that meeting, Plaintiff told DeZwaan that she believed

she had been sexually harassed by Rodewald.  On or about May 15, 2006, Plaintiff also provided

DeZwaan with a written complaint of sexual harassment.  On the complaint form, Plaintiff stated

that the harassment occurred on January 24 and January 26, 2006.  In the course of his investigation,

DeZwaan contacted Saldivar, who had been identified as a witness.  At that time, Saldivar had no

clue what DeZwaan was talking about and Saldivar could not help him.  Subsequently, Saldivar sent

DeZwaan an e-mail and said that she did recall a board member kind of chasing down Plaintiff as

they exited the building and that Plaintiff told him that she had somewhere else to be.

On May 31, 2006, Plaintiff met with Bernadette Henriott, Director of Student Support

Services, for about 45 minutes.  Henriott was a complaint manager for sexual harassment

complaints.  Based upon the information Plaintiff relayed, Henriott did not believe that Rodewald's

actions constituted sexual harassment.  Henriott testified that she reported her finding to DeZwaan.

DeZwaan concluded that, even accepting all of Plaintiff's allegations as true, Rodewald's actions

could not reasonably be considered to be offensive or harassing.  On June 19, 2006, DeZwaan sent

Plaintiff a letter.  The letter stated:

> At this point in time I find no evidence of definitive, overt sexual
>
> harassment stemming from Mr. Rodewald's interactions with you.
>
> It is clear, however, that you were caused to feel uncomfortable when
>
> in Mr. Rodewald's presence on certain occasions, thus I have taken
>
> specific steps in an effort to assure your safety and security as a
>
> continuing employee of the Bourbonnais Elementary School District.
>
> On the afternoon of Friday, May 12, 2006, I met with Mr. Rodewald
>
> in the presence of School Board president, Mr. Mark Regal.  When
>
> we met I explained your complaint and advised Mr. Rodewald to take
>
> the matter seriously.  At the meeting I issued a directive to Mr.
>
> Rodewald regarding any behaviors that might in any way be
>
> construed as sexual harassment.  I further advised that he should
>
> remove himself from the District communications committee, advised
>
> that he should no longer go to the Robert Frost School, even though
>
> recognizing that he wife was employed there, and suggested that only
>
> the most professional and socially acceptable conversation should

occur with you in the future, only when necessary, and only in the

context of other responsible onlookers.  Finally, he was advised that

he should not discuss this matter with you or attempt to gain

understanding from you with regard to the reported harassing

behaviors.

DeZwaan ended the letter by advising Plaintiff to contact the incoming superintendent or Henriott

if she had future interactions with Rodewald that she considered to be of a harassing nature.

Plaintiff's employment contract with the District was renewed for the 2006-2007 school year

and Plaintiff was offered a salary increase to $73,320.  In August 2006, Plaintiff advised the District

that she had taken a position as a principal at the St. George School District, where her husband was

superintendent.  Her salary at the St. George School District was $78,000.  This salary was based

upon a 12 month contract.  The District hired Daniel Chamernick to act as interim/acting principal

of Robert Frost Elementary School for 2006-2007 school year.  Chamernick was paid a salary of

$73,320.

## PROCEDURAL HISTORY

On September 29, 2006, Plaintiff filed a Complaint against Defendants in the Northern

District of Illinois.  On January 31, 2007, Plaintiff filed her First Amended Complaint (#34).  In

Count 1, Plaintiff alleged that the District was liable under Title VII of the Civil Rights Act of 1964

for sexual harassment and for sex discrimination because she was paid a lower salary than similarly

situated male employees.  In Count 2, Plaintiff alleged that the District was liable under Title VII

for retaliation following her complaint of sexual harassment.  In Count 3, Plaintiff alleged that the

District was liable under the Equal Pay Act because the District paid Plaintiff and other female

employees less than similarly situated male employees.  In Count 4, Plaintiff alleged that the District

and Rodewald were liable under 42 U.S.C. § 1983 for denying her constitutional right to equal

protection by subjecting her to sexual harassment.[2]  On July 11, 2007, the case was transferred to

this court.

On October 1, 2008, Rodewald filed his Motion for Summary Judgment (#83) with attached

exhibits.  On October 3, 2008, the District filed its Motion for Summary Judgment (#85) with

attached exhibits and a Memorandum in Support (#86).  On November 19, 2008, Plaintiff filed her

Response to the District's Motion for Summary Judgment (#92), with attached exhibits, and her

Response to Rodewald's Motion for Summary Judgment (#93).  On December 5, 2008, Rodewald

filed his Reply to Plaintiff's Response (#95), with attached exhibits.  On December 5, 2008,

Rodewald filed a Motion to Strike (#97), with attached exhibits.  On December 8, 2008, the District

filed its Reply to Plaintiff's Response (#99), with attached exhibits.

ANALYSIS

I.  MOTION TO STRIKE

In his Motion to Strike (#97), Rodewald argued that the affidavits attached to Plaintiff's

Response to his Motion for Summary Judgment should be stricken, in whole or in part, because the

affidavits contained improper legal conclusions, contained references to hearsay statements, and

contradicted prior deposition testimony.  Rodewald also argued that Plaintiff failed to comply with

Local Rule 7.1 of the Local Rules of the Central District of Illinois when she contested facts listed

in Rodewald's Statement of Undisputed Fact.  Rodewald noted that Plaintiff failed to cite any

---

[2] In Count 5 of her First Amended Complaint, Plaintiff alleged that Rodewald was liable under Illinois law for intentional infliction of emotional distress.  Plaintiff voluntarily dismissed this count on March 6, 2007.

portions of the record that would establish that those facts are disputed.  In its Reply (#99), the District also argued that portions of Plaintiff's affidavit were conclusory and self-serving and contradicted her prior deposition testimony.

A party cannot prevail on a motion for summary judgment by "submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony."  Adusumilli v. City of Chicago, 164 F.3d 353, 360 (7th Cir. 1998), quoting Diliberti v. United States, 817 F.2d 1259, 1263 (7th Cir. 1987).  Therefore, "[w]here deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken. . . ."  Adusumilli, 164 F.3d at 360, quoting Russell v. Acme-Evans Co., 51 F.3d 64, 67-68 (7th Cir. 1995).  This is because affidavits, "when offered to contradict the affiant's deposition are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy.  Beckel v. Wal-Mart Assocs., Inc., 301 F.3d 621, 623 (7th Cir. 2002).  This explanation must come in the affidavit itself.  Beckel, 301 F.3d at 623.

In this case, the affidavits submitted by Plaintiff offered no reason for the discrepancy between the statements in the affidavit and the clear, unequivocal deposition testimony.  See Beckel, 301 F.3d at 623.  Therefore, this court agrees with Rodewald and the District that statements in the affidavits which contradict prior deposition testimony must be disregarded by this court.  This court has also disregarded statements in the affidavits which are self-serving and conclusory, not based on personal knowledge, or which require speculation regarding the motivation of persons other than the affiant.  See Adusumilli, 164 F.3d at 359.

However, this court notes that Motions to Strike are disfavored.  See Orr v. Roberson Mgmt

Corp., 2007 WL 809665, at *1 n.1 (C.D. Ill. 2007).  The Seventh Circuit has expressed the opinion

that motions to strike "are not only unnecessary (from the parties' perspective) but also pointless

(from the judiciary's)."  Custom Vehicles, Inc. v. Forest River, Inc., 464 F.3d 725, 727-28 (7th Cir.

2006).  Therefore, this court generally relies on its ability to consider only arguments and facts

which are properly presented and rarely grants motions to strike.  See, e.g., Orr, 2007 WL 809665,

at *1 n.1; Bloomington Partners, LLC v. City of Bloomington, 2006 WL 2578916, at *8 (C.D. Ill.

2006).  This court is confident that it can rely only on admissible evidence and proper and accurate

statements of the facts in ruling on a Motion for Summary Judgment.  Therefore, Rodewald's

Motion to Strike (#97) is DENIED.

## II.  MOTIONS FOR SUMMARY JUDGMENT

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, a district court

has one task and one task only: to decide, based upon the evidence of record, whether there is any

material dispute of fact that requires a trial.  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th

Cir. 1994).  In making this determination, the court must construe the evidence in the light most

favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist.

303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002).  Speculation, however, is not the source of a

reasonable inference.  See Burwell, 213 F. Supp. 2d at 929, citing Chmiel v. JC Penney Life Ins.

Co., 158 F.3d 966, 968 (7ᵗʰ Cir. 1998).

Therefore, the nonmoving party cannot rest on mere allegations or denials to overcome a

motion for summary judgment; "instead, the nonmovant must present definite, competent evidence

in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7ᵗʰ Cir. 2004). Summary

judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence

it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ.

of City of Chicago, 385 F.3d 1104, 1111 (7ᵗʰ Cir. 2004). Specifically, to survive summary judgment,

the nonmoving party "must make a sufficient showing of evidence for each essential element of its

case on which it bears the burden at trial." Kampmier v. Emeritus Corp., 472 F.3d 930, 936 (7ᵗʰ Cir.

2007), citing Celotex Corp., 477 U.S. at 322-23.

## B.  SEXUAL HARASSMENT CLAIMS

In order to establish a prima facie case for a hostile environment claim under Title VII, a

plaintiff must show that: (1) she was subjected to unwelcome harassment; (2) the harassment was

based on her sex; (3) the harassment was sufficiently severe or pervasive so as to alter the condition

of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer

liability. Kampmier, 472 F.3d at 940; see also Whittaker v. N. Ill. Univ., 424 F.3d 640, 645 (7ᵗʰ Cir.

2005). The threshold for plaintiffs is high, as "[t]he workplace that is actionable is one that is

'hellish.'" Whittaker, 424 F.3d at 645, quoting Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013

(7ᵗʰ Cir. 1997). Plaintiff has not argued that the standard is any different for her claim of sexual

harassment brought under 42 U.S.C. § 1983.

To prove that her work environment was hostile, a plaintiff must demonstrate that it was both

objectively and subjectively offensive. Kampmier, 472 F.3d at 941; see also Ezell v. Potter, 400

2:07-cv-02127-MPM-DGB  # 100   Page 11 of 17

F.3d 1041, 1047 (7th Cir. 2005).  That is, it must be a work environment that a reasonable person would find hostile or abusive, and one that the plaintiff in fact perceived to be hostile or abusive. See Ezell, 400 F.3d at 1047-48; Smith v. N.E. Ill. Univ., 388 F.3d 559, 566 (7th Cir. 2004).  The alleged harassment must be both subjectively and objectively so severe or pervasive as to alter the conditions of her employment and create an abusive work environment.  Whittaker, 424 F.3d at 645. "Courts look to several factors to determine whether the alleged harassment is objectively offensive, including the frequency of the conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the alleged victim's work performance."  Kampmier, 472 F.3d at 941.  Title VII "do[es] not mandate admirable behavior from employers."  See Russell v. Bd. of Trs. of Univ. of Ill. at Chicago, 243 F.3d 336, 343 (7th Cir. 2001).  Therefore, teasing, offhand comments, and isolated, non-egregious incidents are not sufficient to constitute sexual harassment.  See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  The Seventh Circuit has, on many occasions, distinguished between harassing and merely objectionable conduct.  Kampmier, 472 F.3d at 941 (citing cases).

In this case, Plaintiff's claim of sexual harassment is based upon the incidents of January 24 and 26, 2006, and her testimony that Rodewald stared at her in an unprofessional manner approximately 10-12 times, was "too close" to her on several occasions when he was 20 inches away from her and patted her on the shoulder on one occasion.[3]  This court concludes, as the Seventh Circuit did in Adusumilli, that, "[i]n this case, the most salient feature of the harassment is its lack

---

[3] This court notes that Plaintiff, in her Responses to the Motions for Summary Judgment (#92, #93), argued that Rodewald "stalked" her, that Rodewald "expressed a desire that they have a relationship," that Rodewald "constantly pursued" her, that Rodewald "stepped up his attempts at a sexual relationship" with her, and that there were concerns about whether Rodewald was a "sexual predator."  This court concludes that these arguments have absolutely no evidentiary basis and border on the sanctionable.

11

of severity." Adusumilli, 164 F.3d at 361.  In Adusumilli, the conduct the plaintiff complained of

consisted of staring at her breasts and attempts to make eye contact, teasing and jokes with possible

sexual connotations, and four isolated incidents in which a co-worker briefly touched her arm,

fingers, or buttocks.  See Adusumilli, 164 F.3d at 361.  This court similarly concludes that the

conduct complained of by Plaintiff in this case also cannot be considered severe.  Plaintiff here also

complained of "staring" and complained of only one instance of touching, where Rodewald patted

her shoulder to get her attention.  This court concludes that this one instance of physical contact

cannot be considered "physically threatening or humiliating."  This court further concludes that

Rodewald's brief interactions with Plaintiff on January 24 and 26, 2006, cannot be considered

egregious in any way.  Based upon the applicable factors, this court concludes that Plaintiff has not

shown that Rodewald's actions were "objectively so severe or pervasive as to alter the conditions

of her employment and create an abusive work environment."  See Whittaker, 424 F.3d at 645.

The court in Adusumilli stated that it is well established in the Seventh Circuit that there is

a "safe harbor for employers in cases in which the alleged harassing conduct is too tepid or

intermittent or equivocal to make a reasonable person believe that she has been discriminated against

on the basis of her sex."  Adusumilli, 164 F.3d at 362.  This court concludes that Rodewald's

conduct clearly falls within this safe harbor.  Rodewald's actions have to be considered "equivocal"

regarding whether they were in any way based upon sex.  Based upon Plaintiff's own testimony, it

appears much more plausible that Rodewald's actions on January 24, and 26, 2006, were based upon

his desire to talk to Plaintiff about the District's decision not to offer her husband the position of

superintendent of the District.  Moreover, this court concludes that the incidents Plaintiff described

were tepid, isolated incidents, none of which was serious enough to create an abusive environment

that altered Plaintiff's employment.  See Smith, 388 F.3d at 568; Adusumilli, 164 F.3d at 361.

It is very possible that Plaintiff, subjectively, found the incidents offensive and harassing. However, she has not shown that Rodewald's conduct was objectively offensive or, in fact, based upon sex.  Therefore, the District is entitled to summary judgment on Plaintiff's claim of sexual harassment under Title VII and on Plaintiff's claim that the District and Rodewald are liable under 42 U.S.C. § 1983  for denying her constitutional right to equal protection by subjecting her to sexual harassment.

### C.  RETALIATION

In Count 2 of her First Amended Complaint, Plaintiff alleged that the District is liable under Title VII because it retaliated against her after she complained of sexual harassment.  In order to prevail on her retaliation claim, Plaintiff must prove that the District took an adverse action against her because she opposed a practice that Title VII forbids.  See Hancock v. Potter, 531 F.3d 474, 479 (7th Cir. 2008).  An adverse employment action must be materially adverse and is one that significantly alters the terms and conditions of the employee's job.  Griffin v. Potter, 356 F.3d 824, 829 (7th Cir. 2004).  The Seventh Circuit has made clear that "not everything that makes an employee unhappy is an actionable adverse action.  Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit."  Smith, 388 F.3d at 568, quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996).  When a plaintiff makes no showing that she suffered any adverse employment action, summary judgment for the defendant is properly entered.  See de la Rama v. Ill. Dept. of Human Servs., 541 F.3d 681, 686 (7th Cir. 2008).

In this case, it is undisputed that Plaintiff's contract was renewed for the 2006-2007 school

13

year and she was offered an increase in her salary from $70,500 to $73,320.  At her deposition,

Plaintiff testified that she was retaliated against because her complaint of sexual harassment was not

adequately investigated and because she was "living in fear" of what would happen with Rodewald.[4]

Plaintiff's belief that the investigation was inadequate and her subjective feelings of "living in fear"

simply do not constitute an adverse employment action on the part of the District.  An employee's

unhappiness with her employer's conduct or decision is insufficient to support a retaliation claim

under Title VII.  de la Rama, 541 F.3d at 686.

Plaintiff has also argued that she suffered an adverse employment action because she was

"constructively discharged."  "In order to show that a hostile work environment resulted in her

constructive discharge, [Plaintiff] must not only demonstrate that a hostile work environment existed

but also that the abusive working environment was so intolerable that her resignation was an

appropriate response."  McPherson v. City of Waukegan, 379 F.3d 430, 440 (7th Cir. 2004), citing

Pa. State Police v. Suders, 542 U.S. 129, 141 (2004).  The "working conditions for constructive

discharge must be even more egregious than the high standard for hostile work environment because

. . . an employee is expected to remain employed while seeking redress."  McPherson, 379 F.3d at

440, quoting Robinson v. Sappington, 351 F.3d 317, 336 (7th Cir. 2003).  In this case, this court has

determined that Plaintiff has not shown that she was subjected to a hostile work environment.

Moreover, Plaintiff did not present any evidence that she was subjected to harassment by Rodewald

following her report of sexual harassment.  Therefore, her constructive discharge argument is

entirely without merit.

---

[4] This court notes that, based upon the evidence, DeZwaan and Henriott appropriately
concluded that Plaintiff was not subjected to sexual harassment.  Moreover, the record shows
that DeZwaan directed Rodewald to limit his contacts with Plaintiff.  Plaintiff has provided no
evidence indicating that Rodewald engaged in any subsequent harassing conduct toward her.

This court agrees with the District that Plaintiff's testimony does not show that she suffered any adverse employment action after she complained of sexual harassment.  The District is entitled to summary judgment on Plaintiff's retaliation claim.

### D.  SEX DISCRIMINATION AND EQUAL PAY CLAIMS

In its Motion for Summary Judgment, the District set out facts regarding the basis for setting Plaintiff's salary.  The evidence showed that Plaintiff's salary was set based upon the fact that Plaintiff had responsibility for supervising the school in the District which had the smallest number of certified staff - a staff of 13, which was approximately half the number of certified staff in any other District school.  In addition, Robert Frost Elementary School also had the smallest number of students, nearly all of whom were half day students.  The evidence also showed that Plaintiff had a 10½ month contract while the other principals had a 12 month contract.  Considering this fact, Plaintiff was the third highest paid principal in the District on a per diem basis.  The evidence also showed that the male employee who became the principal of Robert Frost Elementary School for the 2006-2007 school year, after Plaintiff resigned her position, was paid the same salary that Plaintiff had been offered, $73,320.

Plaintiff does not dispute any of these facts.  She claims, however, that a genuine issue of material fact exists regarding her sex discrimination claim and her Equal Pay Act claim because the District's evidence shows that two male principals were paid more than she was.  This court cannot agree.

The evidence presented by the District showed that the two principals who were paid more than Plaintiff on a per diem basis had more students in their schools, supervised more certified staff and had more in-district administrative experience.  In order to establish a prima facie case of sex

discrimination in violation of Title VII, Plaintiff must show: (1) she was a member of a protected class, (2) she was meeting her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the employer treated a similarly situated man more favorably. <u>Cullen v. Ind. Univ. Bd. of Trs.</u>, 338 F.3d 693, 704 (7th Cir. 2003). This court agrees with the District that Plaintiff has not shown that a similarly situated male employee was treated more favorably. <u>See</u> <u>Cullen</u>, 338 F.3d at 704. The two male principals who were paid more were not similarly situated to Plaintiff because they had more in-district experience and had more responsibility. The male principal who replaced her was not treated more favorably because he was paid the exact salary that Plaintiff had been offered.

In order to establish a prima facie case under the Equal Pay Act, Plaintiff must show: (1) that different wages were paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill, effort and responsibility; and (3) that the employees have similar working conditions. 29 U.S.C. § 206(d)(1); <u>Fallon v. State of Ill.</u>, 882 F.2d 1206, 1208 (7th Cir. 1989). In this case, the undisputed evidence shows that Plaintiff was not doing "equal work" when compared to the two principals in the District who were paid more. Those principals were responsible for many more students and supervised a much larger staff of certified employees. Therefore, this court agrees with the District that Plaintiff has not identified any administrator/principal of the opposite sex whose work was substantially equal to hers. This court further agrees that the uncontested material facts show that DeZwaan took into account legitimate, bona fide factors other than sex in setting and recommending Plaintiff's salary. <u>See</u> <u>Fallon</u>, 882 F.2d at 1211.

Accordingly, this court concludes that the District is entitled to summary judgment on Plaintiff's sex discrimination claim under Title VII and on her Equal Pay Act claim.

IT IS THEREFORE ORDERED THAT:

(1) Defendant Rob Rodewald's Motion to Strike (#97) is DENIED.

(2) Defendant Rob Rodewald's Motion for Summary Judgment (#83) is GRANTED. Judgment is entered in favor of Defendant Rodewald and against Plaintiff on Count IV of Plaintiff's First Amended Complaint (#34).

(3) Defendant Bourbonnais Elementary School District's Motion for Summary Judgment (#85) is GRANTED.  Judgment is entered in favor of Defendant Bourbonnais Elementary School District and against Plaintiff on Plaintiff's First Amended Complaint (#34).

(4) This case is terminated.

ENTERED this 17th day of December, 2008

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE